Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

DAYS INN WORLDWIDE, INC.,

    *Plaintiff*,

v.

PEARSALL HOTELS, LLC, and AKRUTIBEN PATEL,

    *Defendants*.

Civil Action No. 19-508

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Days Inn Worldwide, Inc.'s unopposed motion for default judgment against Pearsall Hotels, LLC and Akrutiben Patel under Federal Rule of Civil Procedure 55(b). D.E. 35. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**.

**I.    FACTS AND PROCEDURAL HISTORY**[1]

On or about March 22, 2013, Plaintiff Days Inn Worldwide, Inc. ("DIW") and Defendant Pearsall Hotels, LLC ("Pearsall") entered into a Franchise Agreement (the "Agreement"), under

---

[1] The facts of this matter derive from the First Amended Complaint ("FAC"), D.E. 21, which the Court accepts as true for purposes of this motion for default judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

which Pearsall was to operate a 41-room Days Inn guest lodging facility in Pearsall, Texas. FAC ¶ 10. Plaintiff and Pearsall entered into a SynXis Subscription Agreement (the "SynXis Agreement") on or about July 26, 2016, "which governed Pearsall Hotels' access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same." *Id.* ¶ 11.

The FAC details numerous obligations that Pearsall undertook pursuant to the Agreement: Pearsall "was obligated to operate a Days Inn guest lodging facility for a twenty-year term," *id.* ¶ 12; "was required to make certain periodic payments to DIW for royalties, system assessments, taxes, SynXis fees interest, and other fees (collectively, 'Recurring Fees')," *id.* ¶ 13; "agreed that interest is payable 'on any past due amount payable to [DIW] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid,'" *id.* ¶ 14 (alterations in original); "was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Pearsall Hotels at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW," *id.* ¶ 15; and "agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility" and "to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts," *id.* ¶ 16.

Under the terms of the Agreement, Plaintiff could terminate the Agreement with notice to Pearsall "for various reasons," including Pearsall's

> (a) failure to pay any amount due DIW under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the Franchise Agreement, (c) receipt of two or more notices of default under the Franchise Agreement in any one year period,

> whether or not the defaults were cured, (d) failure to operate the Facility as a "Days Inn," and/or (e) loss of possession or the right to possession of the Facility.

*Id.* ¶ 17. Pearsall "agreed that, in the event of a termination of the Franchise Agreement . . . it would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement." *Id.* ¶ 18. Liquidated damages were specified as "the lesser of (i) $1,000 for each guest room of the Facility was authorized to operate at the time of Termination, or (ii) the total amount of Recurring Fees generated at the Facility during the twelve full calendar months of operation immediately preceding the month in with Termination occurs." *Id.* ¶ 19. The parties further agreed that the non-prevailing party would pay the costs and expenses, including attorneys' fees, that the prevailing party expended to enforce the Agreement, or to collect amounts owed pursuant to the Agreement. *Id.* ¶ 20.

The FAC alleges that Patel provided Plaintiff with a guaranty ("Guaranty") of Pearsall's obligations under the Agreement and, pursuant to the terms of the Guaranty, he would "immediately make each payment and perform or cause [Pearsall Hotels] to perform, each unpaid or unperformed obligation of [Pearsall Hotels] under the [Franchise] Agreement." *Id.* ¶¶ 21-22 (alterations in original). Patel also agreed in the Guaranty "to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." *Id.* ¶ 23.

Pearsall lost possession of the Facility on or about September 4, 2018. *Id.* ¶ 24. On January 16, 2019, Plaintiff acknowledged in a letter that Pearsall had terminated the Agreement, effective September 4, 2018. *Id.* ¶ 25. Plaintiff further advised Pearsall that it was required to pay Plaintiff "liquidated damages for the premature termination" in the sum of $24,023.66, as well as "all outstanding Recurring Fees through the date of termination." *Id.* ¶ 26.

3

Plaintiff filed a Complaint, D.E. 1, and then the FAC on March 18, 2020, D.E. 21.[2] On July 8, 2020, Plaintiff requested that default be entered against Pearsall and Patel for failure to plead or otherwise defend, D.E. 27, which the Clerk entered. Plaintiff then filed the present motion. D.E. 35.

II.     STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond. *Anchorage Assoc. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider

---

[2] A third Defendant, Anukul Dass, was also named in the Complaint and the FAC, however, Dass was dismissed as a party on January 26, 2021. D.E. 34.

the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

### III. ANALYSIS

#### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (internal quotation omitted)).

Turning first to subject-matter jurisdiction, the FAC alleges that the Court has diversity jurisdiction, 28 U.S.C. § 1332. FAC ¶ 6. To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life,* LLC, 800 F.3d 99, 104 (3d Cir. 2015). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Id.* And "[a] natural person is deemed to be a citizen of the state where he is domiciled." *Id.* Plaintiff is a Delaware corporation with its principal place of business in New Jersey. *Id.* ¶ 1. Defendant Pearsall is a Texas limited liability company. *Id.* ¶ 2. The FAC alleges that, upon information and belief, Pearsall is comprised of two members who are both citizens of Texas. FAC ¶¶ 2-5. Defendant

5

Patel is a citizen of Texas. *Id.* ¶ 4. Plaintiff alleges that the amount in controversy exceeds $75,000. *Id.* ¶ 6. Thus, the Court has subject-matter jurisdiction over this action.

As for personal jurisdiction, Plaintiff alleges that Pearsall consented to jurisdiction in this district through the Agreement and that Patel consented through the Guaranty. *Id.* ¶¶ 7-8. "[P]arties can consent to the jurisdiction . . . of any particular court." *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 18-10230, 2019 WL 3800234, at *4 (D.N.J. Aug. 13, 2019). Section 17.6.3 of the Agreement reads as follows:

> You[, Pearsall,] consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

D.E. 21-1 at 27. The Guaranty, which Patel signed, provides that "[w]e acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution and waiver of jury trial, applies to this Guaranty." *Id.* at 50. Thus, the Court has personal jurisdiction over both Pearsall and Patel.

### B. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Plaintiff indicates that service upon Pearsall and Patel was proper under Federal Rule of Civil Procedure 4(e)(1). D.E. 25 ¶ 6. That Rule provides as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.

Fed. R. Civ. P. 4(e).[3] Plaintiff does not indicate the state law rules of service on which it relied but states that the Summons and Complaint were served on both Pearsall and Patel by certified and regular mail return receipt requested. D.E. 25 ¶ 6. No return receipts were included with Plaintiff's filing of the Affidavit of Service. *See id.* Without the relevant state law and proof of proper service in accordance therewith, the Court is unable to conclude whether service was proper.

### C. Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Complaint adequately states a cause of action. The Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. The FAC includes six counts but does not label the cause of action raised in each count. FAC ¶¶ 26-51. Neither Plaintiff's moving papers, nor the FAC, provide or analyze these underlying causes of action. Count One seeks "judgment ordering that Pearsall Hotels account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception to the date of termination of the Franchise Agreement." It is not clear to the Court whether Count One alleges a breach of contract. The remaining counts appear to allege contract claims stemming from Defendants' termination of the parties' Agreement. Plaintiff fails to indicate the applicable law in this diversity action or the elements of each cause of action alleged in the FAC – much less why Plaintiff is entitled to relief. As a result, Plaintiff's motion is denied.

---

[3] Because Rule 4(e)(1) indicates how *an individual* may be served, the proper rule to dictate service for Pearsall, an LLC, appears to be Rule 4(h)(1)(A). However, the Court notes that pursuant to Rule 4(h)(1)(A), an LLC may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

7

### D. Damages

While the factual allegations of the FAC "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hospitality Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016). In order to obtain an award for damages, Plaintiff must submit proofs detailing how damages were calculated.

Plaintiff's motion includes an Affidavit of Joanna Kobylarz, D.E. 35-3, which specified the total amount of damages sought; however neither the affidavit nor the exhibits attached thereto demonstrate how Plaintiff calculated damages. For example, the affidavit indicates that Plaintiff seeks $24,023.66 in liquidated damages "as required under the Franchise Agreement." D.E. 35-3 at 5. The Agreement provides that the liquidated damages owed would be "the lesser of (i) $1,000 for each guest room of the Facility was authorized to operate at the time of Termination, or (ii) the total amount of Recurring Fees generated at the Facility during the twelve full calendar months of operation immediately preceding the month in with Termination occurs." D.E. 21-1 at 25. It is not clear to the Court how each calculation was computed – Plaintiff does not provide information on the number of guest rooms Defendants were authorized to operate or information on the Recurring Fees from the prior twelve months. Insofar as the attached "Itemized Statement," D.E. 35-4, seeks to provide this information, Plaintiff must explain what the entries are in this statement, and how they were used to calculate damages.

### IV. CONCLUSION AND ORDER

Therefore, for the foregoing reasons, and for good cause shown,

IT IS on this 9th day of July, 2021

**ORDERED** that Plaintiff's motion for default judgment, D.E. 35, is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff is granted leave to cure the noted deficiencies within 30 days.

_John Michael Vazquez, U.S.D.J._