**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAYS INN WORLDWIDE, INC.,

    *Plaintiff*,

v.

PEARSALL HOTELS, LLC, and AKRUTIBEN PATEL,

    *Defendants*.

Civil Action No. 19-508

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Days Inn Worldwide, Inc.'s renewed unopposed motion for default judgment against Pearsall Hotels, LLC, and Akrutiben Patel under Federal Rule of Civil Procedure 55(b). D.E. 40. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

    I.    **FACTS AND PROCEDURAL HISTORY**

The Court recounts the facts and procedural history relied upon in its previous Opinion and Order, D.E. 36, in response to Plaintiff's first application for a default judgment, D.E. 35. The facts of this matter derive from the First Amended Complaint ("FAC"), D.E. 21, which the Court

accepts as true for purposes of this motion for default judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

On or about March 22, 2013, Plaintiff Days Inn Worldwide, Inc. ("DIW") and Defendant Pearsall Hotels, LLC ("Pearsall") entered into a Franchise Agreement (the "Agreement"), under which Pearsall was to operate a 41-room Days Inn guest lodging facility in Pearsall, Texas. FAC ¶ 10. Plaintiff and Pearsall entered into a SynXis Subscription Agreement (the "SynXis Agreement") on or about July 26, 2016, "which governed Pearsall Hotels' access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same." *Id.* ¶ 11.

The FAC details numerous obligations that Pearsall undertook pursuant to the Agreement: Pearsall "was obligated to operate a Days Inn guest lodging facility for a twenty-year term," *id.* ¶ 12; "was required to make certain periodic payments to DIW for royalties, system assessments, taxes, SynXis fees interest, and other fees (collectively, 'Recurring Fees')," *id.* ¶ 13; "agreed that interest is payable 'on any past due amount payable to [DIW] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid,'" *id.* ¶ 14 (alterations in original); "was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Pearsall Hotels at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW," *id.* ¶ 15; and "agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility" and "to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts," *id.* ¶ 16.

Under the terms of the Agreement, Plaintiff could terminate the Agreement with notice to Pearsall "for various reasons," including Pearsall's

> (a) failure to pay any amount due DIW under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the Franchise Agreement, (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured, (d) failure to operate the Facility as a "Days Inn," and/or (e) loss of possession or the right to possession of the Facility.

*Id.* ¶ 17. Pearsall "agreed that, in the event of a termination of the Franchise Agreement . . . it would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement." *Id.* ¶ 18. Liquidated damages were specified as "the lesser of (i) $1,000 for each guest room of the Facility was authorized to operate at the time of Termination, or (ii) the total amount of Recurring Fees generated at the Facility during the twelve full calendar months of operation immediately preceding the month in with Termination occurs." *Id.* ¶ 19. The parties further agreed that the non-prevailing party would pay the costs and expenses, including attorneys' fees, that the prevailing party expended to enforce the Agreement, or to collect amounts owed pursuant to the Agreement. *Id.* ¶ 20.

The FAC alleges that Patel provided Plaintiff with a guaranty ("Guaranty") of Pearsall's obligations under the Agreement and, pursuant to the terms of the Guaranty, he would "immediately make each payment and perform or cause [Pearsall Hotels] to perform, each unpaid or unperformed obligation of [Pearsall Hotels] under the [Franchise] Agreement." *Id.* ¶¶ 21-22 (alterations in original). Patel also agreed in the Guaranty "to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." *Id.* ¶ 23.

Pearsall lost possession of the Facility on or about September 4, 2018. *Id.* ¶ 24. On January 16, 2019, Plaintiff acknowledged in a letter that Pearsall had terminated the Agreement, effective September 4, 2018. *Id.* ¶ 25. Plaintiff further advised Pearsall that it was required to pay Plaintiff "liquidated damages for the premature termination" in the sum of $24,023.66, as well as "all outstanding Recurring Fees through the date of termination." *Id.* ¶ 26.

Plaintiff filed a Complaint, D.E. 1, and then the FAC on March 18, 2020, D.E. 21.[1] On July 8, 2020, Plaintiff requested that default be entered against Pearsall and Patel for failure to plead or otherwise defend, D.E. 27, which the Clerk entered.

Plaintiff filed its initial motion for default judgment on February 5, 2021. D.E. 35. In an Opinion and Order, the Court denied Plaintiff's motion. D.E. 36. While the Court was satisfied that it had subject-matter and personal jurisdiction, *id.* at 5-6, the Court could not determine whether Plaintiff properly effected service under Federal Rule of Civil Procedure 4(e) because Plaintiff did not specify which sovereign's law controlled and did not provide proof of service, *id.* at 6-7. The Court also found that "Plaintiff fail[ed] to indicate the applicable law in this diversity action or the elements of each cause of action alleged in the FAC – much less why Plaintiff is entitled to relief." *Id.* at 7. Finally, the Court held that Plaintiff had insufficiently established its entitlement to damages, as the documents it submitted were conclusory and did not explain how it arrived at the amount of requested damages. *Id.* at 8. Accordingly, the Court denied Plaintiff's motion without prejudice, and granted Plaintiff "leave to cure the noted deficiencies …." *Id.* at 9. Plaintiff filed a renewed motion on September 10, 2021. D.E. 40. To date, Pearsall and Patel have not responded.

---

[1] A third Defendant, Anukul Dass, was also named in the Complaint and the FAC, but Dass was dismissed as a party on January 26, 2021. D.E. 34.

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond. *Anchorage Assoc. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

### III. ANALYSIS

#### A. Jurisdiction

The Court adopts and incorporates its prior determinations that it has both subject-matter and personal jurisdiction. D.E. 36 at 5-6.

#### B. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, Inc., 756 F.2d 14, 19 (3d Cir. 1985)). In its renewed motion, Plaintiff indicates that service upon Pearsall and Patel was proper under Federal Rule of Civil Procedure 4(e)(1). D.E. 40-1 ("P. Br.") at 5. That Rule provides as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.

Fed. R. Civ. P. 4(e)(1).[2] Plaintiff maintains that it properly served Pearsall and Patel pursuant to New Jersey law. P. Br. at 6. Specifically, Plaintiff asserts that it complied with New Jersey Court Rule 4:4-4(b)(1)(C) "by mailing a copy of the summons and amended complaint via certified mail, return receipt requested, and regular mail[,]"*id.*, and filing an "affidavit of diligence explaining that DIW's process server attempted to serve each defendant on multiple occasions." *Id.* at 5.

The cited New Jersey Rule provides as follows:

> If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then, consistent

---

[2] Because Rule 4(e)(1) indicates how *an individual* may be served, the proper rule to dictate service for Pearsall, an LLC, appears to be Rule 4(h)(1)(A). However, the Court notes that pursuant to Rule 4(h)(1)(A), an LLC may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

6

> with due process of law, *in personam* jurisdiction may be obtained over any defendant as follows:
>
> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office. Mail may be addressed to a post office box in lieu of a street address only as provided by R. 1:5-2.

N.J. Ct. R. 4:4-4(b)(1)(C). New Jersey Court Rule 4:4-5(b) in turn provides that,

> The inquiry required by this rule shall be made by the plaintiff, plaintiff's attorney actually entrusted with the conduct of the action, or by the agent of the attorney; it shall be made of any person who the inquirer has reason to believe possesses knowledge or information as to the defendant's residence or address or the matter inquired of; the inquiry shall be undertaken in person or by letter enclosing sufficient postage for the return of an answer; and the inquirer shall state that an action has been or is about to be commenced against the person inquired for, and that the object of the inquiry is to give notice of the action in order that the person may appear and defend it. The affidavit of inquiry shall be made by the inquirer fully specifying the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice.

N.J. Ct. R. 4:4-5(b). In short, "New Jersey Court Rule 4:4-5(b) requires the plaintiff to submit an affidavit stating that despite diligent inquiry and effort, the defendant cannot be personally served in New Jersey." *Baymont Franchise Sys., Inc. v. Bernstein Co., LLC*, No. 18-620, 2019 WL 1455577, at *3 (D.N.J. Apr. 1, 2019) (citing N.J. Ct. R. 4:4-5(b); *Sobel v. Long Island Ent. Prods., Inc.*, 747 A.2d 796, 800 (N.J. Super. Ct. App. Div. 2000)).

Thus, New Jersey law only allows service by mail, as opposed to personal service, if a party submits the affidavit contemplated by New Jersey Court Rule 4:4-5(b). Examining the exhibits attached to D.E. 25, the Court finds that Plaintiff satisfies New Jersey Court Rule 4:4-5(b) because the documents show that a process server twice went to Pearsall's place business, attempted to serve Pearsall and Patel there, inquired of two employees when and how often Patel was present at Pearsall, and swore before a notary that they could not effect service. D.E. 25 at 3-14.[3]

The Court further determines that Plaintiff has served Pearsall and Patel in accordance with New Jersey Rule 4:4-4(b)(1)(C). Here, Plaintiff, in an attorney certification, avers that "[t]he Summons and a copy of the Amended Complaint were served upon Pearsall Hotels, LLC and Akrutiben Patel on June 5, 2020, via regular and certified mail, return receipt requested[.]" D.E. 40-3 ¶ 6. Plaintiff also includes a copy of the certified and regular mail as well as United States Postal Service tracking information. D.E. 25 at 14; 40-3 at 4-8. Accordingly, the Court finds that Plaintiff has properly served Pearsall and Patel pursuant to Federal Rule 4(e)(1).

### C. Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the First Amended Complaint adequately states a cause of action. As noted, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. The FAC includes six counts but does not label the cause of action raised in each count. FAC ¶¶ 26-51. In

---

[3] The Court pauses to note that, according to Plaintiff's process server, Patel has the same address as Pearsall, *compare* D.E. 25 at 4, *with id.* at 9. In the First Amended Complaint, however, Plaintiff indicates that, upon information and belief that Patel, has another mailing address. FAC ¶ 4. Nevertheless, the Court accepts Plaintiff's representation that it could not find another address for Patel.

its letter brief, Plaintiff appears to represent that all six counts assert claims for breach of contract. *See* P. Br. at 6.

Plaintiff does not explicitly indicate which state's law governs its breach of contract claims. However, Plaintiff does cite to New Jersey case law in its analysis of its claims. *See id.* at 6. Moreover, Section 17.6.1 of the Agreement provides that it "will be governed by and construed under the laws of the State of New Jersey[.]" D.E. 21-1 at 22. The Guaranty executed by Patel incorporates Section 17 of the Agreement. *Id.* at 50. Section 16.8 of the SynXis Agreement calls for that agreement to "governed by … the laws of the State of New Jersey[.]" *Id.* at 63.

In the usual diversity-jurisdiction case, "[t]o choose which state law will apply, 'a federal court … must apply the choice-of-law rules of the forum state.'" *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This analysis is required "*even where the contract contains a choice-of-law clause*." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 300 (D.N.J. 2020) (emphasis in original); *see also Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021). Thus, the Court must "turn to New Jersey choice-of-law rules to determine what state's substantive contract law governs the interpretation of the Agreements' forum selection clauses, since this diversity action originated in a New Jersey federal district court." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 651 (D.N.J. 2018) (quoting *Instructional Sys, Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Courts applying New Jersey law look to Section 187 of the Second Restatement of Conflicts of Laws "to

determine under what circumstances a choice-of-law clause will *not* be respected." *Collins*, 874 F.3d at 184 (emphasis in original).

Plaintiff does not perform this analysis, but instead appears to assume that those contractual provisions are valid and that New Jersey law governs. The Court is not aware of any potential violation of New Jersey's public policy, so the Court will apply New Jersey law.

"To prevail on a claim of breach of contract" under New Jersey law, the plaintiff must

> prove four elements: first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a 'breach of the contract'; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)) (internal quotation marks omitted).

Plaintiff alleges that it had validly executed three contracts with Pearsall and Patel: the Agreement, the SynXis Agreement, and the Guaranty. D.E. 40-1 at 6. *See also* FAC ¶¶ 10-11, 21. After reviewing the contract, D.E. 21-1 at 1-80, the Court finds that Plaintiff has established the first element. Next, it appears that Plaintiff performed its obligations under the agreements, so the second requirement is satisfied as well.

Third, the Court finds that there has been a breach of the agreements. Specifically, "[o]n or about September 4, 2018, Pearsall Hotels lost possession of the Facility." FAC ¶ 24. Section 11.2 of the Agreement empowers Plaintiff to "terminate [the Agreement[]]" if Plaintiff "lose[s] … possession of the Facility," D.E. 21-1 at 15-16, and Section 14.2 of the SynXis Agreement deems a breach of the Franchise Agreement to constitute a breach of the SynXis Agreement, *id.* at 61. Further, Plaintiff indicates that Patel has failed to live up to his obligations under the Guaranty. FAC ¶ 50. Accordingly, the Court finds that Plaintiff has satisfied the third element.

10

Fourth, Plaintiff "suffered damages as a result of defendants' breach, in particular its failure to operate the Facility, pay outstanding Recurring Fees, and pay liquidated damages." D.E. 21-1 at 6. The Court finds that Pearsall and Patel's breaches of their contracts with Plaintiff have caused Plaintiff harm. Among other things, Pearsall has not paid amounts due under the agreements, including royalties and SynXis fees. And Patel has not covered Pearsall's default.

Accordingly, the Court finds that Plaintiff has stated claims for breach of contract.

### D. Damages

While the factual allegations of the FAC "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016).

In the second count of the First Amended Complaint, Plaintiff seeks "liquidated damages in the amount of $24,023.66, together with interest, attorneys' fees, and costs of suit." FAC ¶ 35. In the fourth count of the First Amended Complaint, Plaintiff seeks $134,744.54 "for the Recurring Fees due and owing under the Franchise Agreement[.]" *Id.* ¶ 43.

In its previous Opinion and Order, the Court observed that Plaintiff had not demonstrated how it had calculated its requested damages. D.E. 36 at 8. In its renewed motion, as to past due Recurring Fees, Plaintiff asserts that those fees "are computed pursuant to mutually agreed upon formulas set forth in section 7, section 18.6, and Schedule C of the Franchise Agreement, and section 5 of the SynXis Agreement." P. Br. at 7. Plaintiff also points to paragraph nineteen of the affidavit of Suzanne Fenimore. D.E. 40-4 ("Fenimore Aff.") ¶ 19. As to liquidated damages, Plaintiff points to Section 18.5 of the Agreement, which calls for

11

> liquidated damages … at the lesser of (i) $1,000 for each guest room of the Facility was authorized to operate at the time of Termination, or (ii) the total amount of Recurring Fees generated at the Facility during the twelve full calendar months of operation immediately preceding the month in with Termination occurs.

P. Br. at 8 (emphasis omitted); *see also* D.E. 21-1 at 25.  Plaintiff calculates that under option (i), it would be entitled to $41,000 by multiplying the Facility's number of rooms (41) by 1000. Fenimore Aff. ¶ 26.  Plaintff calculates that under option (ii), it would be entitled to $24,023.66. *Id.* ¶ 27.  Plaintiff points to several exhibits attached to Fenimore's affidavit, which Plaintiff represents itemize the various elements of the aggregated Recurring Fees fort the calendar year preceding the termination.  *Id.* ¶ 26.  Additionally, Plaintiff asserts that it may further collect interest on the Recurring Fees in the amount of $12,987.60, bringing its total liquidated damages under option (ii) to $37,011.26.  P. Br. at 8.  Because the amount due under option (ii) is less than the amount due under option (i), Plaintiff seeks to collect that amount.  *See id.*

The Court finds that Plaintiff has cured the deficiencies in its calculation of damages.  As to the past-due Recurring Fees, the Court begins with paragraph 19 of Fenimore's Affidavit. Paragraph 19 of Fenimore's Affidavit reads,

> DIW is now seeking Recurring Fees in the current amount of $117,673.38 inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to section 7.3 of the Franchise Agreement). Attached hereto as Exhibit F is a copy of an itemized statement (the "Itemized Statement") prepared by DIW, which sets forth the amount of Recurring Fees due and owing from Defendants.

Fenimore Aff. ¶ 19 (footnote omitted).  In reviewing Exhibit F, the Court finds that the financial log adequately establishes the charges that Pearsall incurred.  *See* D.E. 40-4 at 103-08. Accordingly, the Court finds that Plaintiff has established its entitlement to past-due Recurring Fees of $117,673.38.

As to Plaintiff's application for liquidated damages, the Court notes that under New Jersey law, contractual provisions calling for liquidated damages can be subjected to judicial scrutiny before they are enforced. *E.g.*, *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 732 A.2d 493, 499 (N.J. 1999). Courts burden "the party challenging the clause … [with] proving its unreasonableness." *Id.*; *see also Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 159 (3d Cir. 2015). Because the Defendants have not appeared in case, they cannot contest the provision's reasonableness, and the Court accepts the provision as reasonable and enforceable.

The Court also finds that Plaintiff has adequately established its liquidated damages. Exhibit G demonstrates that Plaintiff's base recovery under option (ii) would be $24,023.66. Plaintiff likewise shows that it is entitled to interest, as set forth in paragraph 28 of Fenimore's Affidavit, Fenimore aff. ¶ 26, bringing the total to $37,011.26. P. Br. at 8. Because this total is less than the $41,000 available under option (i), the Court finds that $37,011.26 is the appropriate amount of liquidated damages.

Accordingly, the Court finds that Plaintiff has adequately established its damages.

### E. Default Judgment Factors

Before imposing default judgment, district courts must determine the appropriateness of the judgment by weighing "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court does not find any meritorious defenses in the record. *See Teamsters Pension Fund*, 2011 WL 4729023, at *4. Plaintiff has also been prejudiced by Defendants' failures to respond as Plaintiff cannot seek relief in the normal course. *See id.* Finally, Defendants' failures to answer evidence culpability

in their default, *see id.*, as do their apparent efforts, reported by the process server, *see, e.g.,* D.E. 25 at 4-5, to evade service of process, *see Dee Paper Co., Inc. v. Loos*, No. 15-1513, 2015 WL 5460590, at *5 (E.D. Pa. Sept. 17, 2015) (declining to vacate default judgment where even though plaintiff "would apparently suffer no prejudice, both the lack of a meritorious defense and culpable conduct in evading service lead this court to deny the motion").  As a result, the Court finds that default judgment is appropriate.

### IV.     CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's renewed motion for default judgment, D.E. 40, is granted.  An appropriate Order accompanies this Opinion.


Date: 10/20/21

_____
John Michael Vazquez, U.S.D.J.